RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

RAMANI PILLA,

    *Petitioner-Appellant,*

  *v.*

UNITED STATES OF AMERICA,

     *Respondent-Appellee.*

No. 10-4178

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 07-00228-001; 09-02370—
David D. Dowd, Jr., District Judge.

Argued: June 1, 2011

Decided and Filed: February 6, 2012

Before: BOGGS and KETHLEDGE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Michael A. Partlow, MORGANSTERN, MacADAMS & DeVITO CO., L.P.A., Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael A. Partlow, MORGANSTERN, MacADAMS & DeVITO CO., L.P.A., Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

KETHLEDGE, Circuit Judge.  Ramani Pilla, a citizen and native of India, was removed from the United States after pleading guilty to making false, misleading, or fraudulent statements to the FBI, in violation of 18 U.S.C. § 1001.  She now seeks a writ of *coram nobis*, which is an extraordinary writ sometimes available to federal convicts who have already completed their prison term.  She claims her trial counsel was ineffective because he gave her bad advice about the immigration consequences of her guilty plea.  The district court denied the writ.  We affirm.

I.

While employed as an assistant professor at Case Western University, Pilla told the FBI—and the university—that she had received several pieces of hate mail at her university office.  The FBI and the university spent thousands of dollars investigating Pilla's report before she admitted to writing and delivering the hate mail herself.  After Pilla pled guilty to violating 18 U.S.C. § 1001, she was sentenced to six months in prison and ordered to pay more than $66,000 in restitution.

Steven Bell represented Pilla during her criminal case.  He encouraged Pilla to plead guilty after the government provided him with overwhelming evidence of her guilt.  The evidence included still frames from a surveillance camera that showed Pilla sliding letters under her office door, copies of the FBI report documenting Pilla's own confession to the hoax, and a CD of "telephone conversations or voice mails" between Pilla and an FBI agent.  Bell later testified that, after conducting extensive research, he thought "the likelihood of having [Pilla's] confession suppressed [was] close to zero."

So Bell researched potential defenses consistent with the confession.  In particular, he considered a diminished-capacity defense based upon Pilla's alleged mental illness and her addiction to a drug called Klonopin.  Although Bell found two psychiatrists to examine Pilla, each of them refused to testify in support of this defense.

Bell also interviewed an expert whom Pilla herself proposed—a medical doctor and ex-colleague of Pilla's—but he likewise refused to testify. Pilla also suggested another defense altogether—that someone had broken into her house and written the letters on her laptop—but Bell rejected it because "the story didn't have any credibility" and a forensic examination of Pilla's computer would have been too expensive. Bell ultimately advised Pilla that she would probably receive a shorter prison sentence if she pled guilty rather than proceeding to trial.

Pilla is not a United States citizen, so Bell considered whether a guilty plea might have immigration consequences for her. He consulted a statute discussing deportation of non-citizens convicted of "aggravated felonies," but decided it was "over [his] head, well beyond [his] expertise." Thus he contacted Robert Brown, an immigration attorney who had previously served as an acting regional director for the U.S. Immigration and Naturalization Service. Bell described the case to Brown and later sent him copies of the Bill of Information and the government's restitution calculations. Bell, Brown, and Pilla thereafter discussed whether the charged conduct would constitute an aggravated felony for immigration purposes. Brown said that "the charge to which Dr. Pilla was going to in all likelihood enter a guilty plea was not an aggravated felony," meaning that she would not necessarily be deported upon her conviction.

Brown's advice turned out to be incorrect. An immigration judge determined that Pilla's offense was, in fact, an aggravated felony and that she was therefore removable under 8 U.S.C. § 1227(a)(2)(A)(iii). The Board of Immigration Appeals agreed and dismissed Pilla's appeal. In a companion case to this one, we have agreed with the immigration judge and the Board. *See Pilla v. Holder*, No. 09-4577.

While in federal prison, Pilla challenged her sentence—but not her plea or conviction—in a motion for habeas corpus relief under 28 U.S.C. § 2255. The district court denied the motion. Pilla then sought permission to file a second § 2255 motion. We denied her request because Pilla could not satisfy the second-or-successive requirements set forth in § 2255(h).

In September 2009, after completing her prison sentence, Pilla filed a petition for a writ of *coram nobis* in the district court.  In the petition, she argued that Bell was ineffective for failing to advise her that a guilty plea would result in automatic deportation.  The district court allowed discovery and granted both parties several extensions of time to file supplemental briefing. Following a status conference, the court gave Pilla's attorney until August 13, 2010 to file a supplemental brief.  He did not file the document in time: instead, he waited until fifteen minutes after the deadline and then requested a two-week extension.  The court granted him one week.  When her attorney missed that deadline as well, the court issued a thorough opinion denying Pilla's petition. Pilla's counsel thereafter filed a motion for relief from judgment and attached a supplemental memorandum.  The court reviewed the memo, found that it would not have changed the decision, and denied the motion.

This appeal followed.

II.

We review the district court's denial of a writ of *coram nobis* de novo, but uphold the court's factual findings unless they are clearly erroneous. *Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996).

*Coram nobis* is an extraordinary writ that may be used to "vacate a federal sentence or conviction when a § 2255 motion is unavailable—generally, when the petitioner has served his sentence completely and thus is no longer in custody[.]" *Id.* at 231.  We grant the writ only if the petitioner demonstrates a factual error that was unknown at the time of trial and that is "of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001).

A.

Pilla's claim in seeking the writ—that Bell provided constitutionally ineffective assistance with respect to her plea—is one that she could have raised in her § 2255 motion. One might argue, therefore, that we should treat her petition for a writ of *coram nobis* as a second or successive motion for relief under § 2255. The Seventh Circuit has held that "[a]ny motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 ¶1, *is* a motion under § 2255, no matter what title the prisoner plasters on the cover." *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) (Easterbrook, J.) (emphasis in original). The Supreme Court has likewise adopted a functional approach in determining whether a motion counts as a successive application for relief under 28 U.S.C. § 2254. *See Calderon v. Thompson*, 523 U.S. 538, 553 (1998) ("In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b)").

We agree with the Seventh Circuit's holding in *Melton*. If, in substance, a claim falls within the scope of § 2255(a), it should be treated as such regardless of any "inventive captioning" by the prisoner. *Melton*, 359 F.3d at 857. But part of the substance of a § 2255 motion is that it is filed by "[a] prisoner *in custody* under sentence of a court established by Act of Congress[.]" 28 U.S.C. § 2255(a) (emphasis added); *see also Melton*, 359 F.3d at 857. That is why the courts do not consider the merits of § 2255 motions filed by persons no longer in custody. *See Blanton*, 94 F.3d at 231. Here, Pilla was no longer in custody when she filed her petition for a writ of *coram nobis*, which means her petition is not in substance a motion under § 2255. Her petition is therefore not a second or successive motion for relief under that section; and thus we proceed to consider its merits.

B.

To prove a claim of ineffective assistance, Pilla must show that Bell's performance was deficient and that his deficient performance prejudiced her defense. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). To show prejudice, Pilla must demonstrate a reasonable probability that, "but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Pilla cannot make that showing merely by telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective; and thus, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).

So we consider whether Pilla can make these showings. Her argument on the performance prong depends on her contention that, at the time of her criminal case, her criminal lawyer actually had a duty to provide her with accurate advice regarding the effect of her criminal conviction upon her immigration status. The Supreme Court first announced this duty in *Padilla*, which came years after Bell advised Pilla here. The United States says the duty cannot be imposed retroactively on Bell; Pilla says it can.

But we need not decide that issue here, because in any event Pilla cannot show prejudice. As noted above, Pilla faced overwhelming evidence of her guilt, which included a video that showed her planting the letters, a CD of incriminating phone conversations, and FBI interview notes documenting her confession. Given this evidence, the district court found that Pilla "had no realistic chance of being acquitted at trial" and that, if she had proceeded to trial, she "had no rational defense, would have been convicted and would have faced a longer term of incarceration." Those findings were not clearly erroneous, or indeed erroneous at all. And had Pilla been convicted after trial, she would have been just as removable as she was after her guilty plea. The only consequence of Bell's inaccurate advice—assuming one believes Pilla's assertion that she would have gone to trial had she gotten accurate advice—is that she got a shorter prison term than otherwise. But more to the point, no rational defendant in

Pilla's position would have proceeded to trial in this situation. Pilla therefore has not shown that Bell's advice created even a "reasonable probability" of prejudice. And thus she cannot show that Bell's advice "probably . . . altered the outcome of the challenged proceeding," as required for a writ of *coram nobis*. *Johnson*, 237 F.3d at 755.

Pilla separately argues that her guilty plea was unknowing and involuntary. The district court did not address this argument because Pilla presented it for the first time in the late reply brief attached to her motion for relief from judgment. Issues so presented to the district court are not preserved for appeal. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). The argument is forfeited.

Pilla finally argues that the district court erred in denying her motion for relief from judgment. Federal Rule of Civil Procedure 60(b)(1) provides that a district court may, in its discretion, relieve a party from a final judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." The district court did not abuse its discretion in finding no such grounds here.

The district court's judgment is affirmed.