Present:  Lemons, C.J., Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

MICHAEL BERHANE ZEMENE

                                        OPINION BY
v.  Record No. 140719    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                    February 26, 2015
HAROLD CLARKE, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Bruce D. White, Judge


    In this appeal, we consider whether the Circuit Court of Fairfax County erred in dismissing Michael Berhane Zemene's petition for writ of habeas corpus.  The court dismissed Zemene's petition on the ground that he failed to establish actual prejudice resulting from his counsel's failure to advise him of the collateral consequences upon his immigration status of accepting a plea agreement.  See Padilla v. Kentucky, 559 U.S. 356, 367 (2010).

                        STANDARD OF REVIEW

    Because entitlement to habeas relief is a mixed question of law and fact, the habeas court's findings and conclusions are not binding upon this Court, but are subject to review to determine whether the court correctly applied the law to the facts.  Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997).  Where, as in this case, the habeas court dismissed the petition based upon a review of the pleadings without an evidentiary hearing, we review the decision to dismiss the

petition de novo.  See Dominguez v. Pruett, 287 Va. 434, 440, 756 S.E.2d 911, 914 (2014).  "It is also well settled that where, as here, the well pleaded allegations of the petition are not denied they must be accepted as true."  Morris v. Smyth, 202 Va. 832, 833, 120 S.E.2d 465, 466 (1961)(per curiam).

## BACKGROUND

Zemene, a native of Ethiopia, lawfully immigrated to the United States on June 29, 2000 at the age of nine.  Zemene's immigration status as a "derivative asylee" was based upon his father's membership in the All Amhara People's Organization, an opposition political group subject to violent repression by the government of Ethiopia.  Zemene's immigration status changed to "lawful permanent resident" on October 25, 2005.[1]

On September 3, 2012, Fairfax County police responded to a dispatch advising that a security officer at a grocery store was detaining Zemene as a suspect for shoplifting.  Based upon a statement taken from the security officer that Zemene was apprehended attempting to shoplift beer valued at $33, police

---

[1] A lawful permanent resident is an immigrant who has "the status of having been lawfully accorded the privilege of residing permanently in the United States," but has not yet become a naturalized citizen.  8 U.S.C. § 1101(a)(20).  The documentation provided to the immigrant showing his status as a lawful permanent resident is commonly known as a "green card."  See, e.g., United States v. Guijon-Ortiz, 660 F.3d 757, 759 (4th Cir. 2011).

arrested Zemene, taking him before a magistrate who issued a warrant of arrest for petit larceny in violation of Code § 18.2-96.

The original return date on the warrant charging Zemene with petit larceny was October 10, 2012. For reasons not fully explained in the record, the case was continued to December 5, 2012, and then again at the request of the arresting officer to December 19, 2012. Zemene failed to appear on that date, and a bench warrant for his arrest was issued. Zemene was arrested on the bench warrant on January 8, 2013.

On January 15, 2013, attorney Laurence Tracy was appointed by the Fairfax County General District Court to represent Zemene on the petit larceny and failure to appear charges. During their initial interview, Zemene informed Tracy that "I was not a U.S. Citizen, but that I did have a green card." The entire interview took less than 30 minutes. Zemene unsuccessfully made several attempts to contact Tracy during the next month by phone.

Ultimately, Zemene's trial in the general district court was set for February 19, 2013. On the morning of Zemene's trial, Tracy advised Zemene that the Commonwealth had "dropped" the failure to appear charge. Tracy further informed Zemene that in exchange for a guilty plea on the

3

petit larceny charge, the Commonwealth had indicated that Zemene would receive a 12 month suspended sentence, which would permit Zemene to be released immediately so that he would not be incarcerated on his birthday, which was the next day.  Tracy advised Zemene that "this was the best deal that he could get for me."  Zemene "wanted to consult more with Mr. Tracy to see if this truly was a good deal; however, I felt very rushed and signed the plea agreement."  At no time did Tracy advise Zemene of the collateral consequences of the plea and sentence upon Zemene's immigration status.  The general district court accepted Zemene's plea of guilty, sentencing him in accord with the agreement to 12 months incarceration with all time suspended.[2]

On June 27, 2013, Zemene received a notice to appear from the Department of Homeland Security's Immigration and Customs Enforcement division ("ICE").  The notice informed Zemene that he was subject to removal from the United States as a result of his conviction under "a law relating to a theft offense . . . for which a term of imprisonment [of] at least 1 year

_____

[2] The records of the general district court reflect that three other misdemeanor charges against Zemene, including the charge for failing to appear on December 19, 2012, were dismissed by nolle prosequi during the same proceeding.

was imposed."[3]  See 8 U.S.C. § 1227(a)(2)(A)(iii).  Zemene was taken into custody and held at the federal Farmville Detention Center.

On November 27, 2013, Zemene filed a petition for writ of habeas corpus in the Circuit Court of Fairfax County against Harold Clarke, the Director of the Virginia Department of Corrections (hereinafter, "the Commonwealth").  Code § 8.01-654.[4]  Zemene alleged that Tracy had rendered ineffective assistance of counsel because Tracy lacked a proper understanding of the collateral consequences upon Zemene's immigration status that would result from the conviction for petit larceny and a sentence of twelve months when Tracy negotiated the plea agreement with the Commonwealth, and also by failing to inform Zemene of the negative impact of the plea agreement on his immigration status.

---

[3] We are cognizant of the recent decision in Omargharib v. Holder, ___ F.3d___, 2014 U.S. App. LEXIS 24289, at *2 (4th Cir. Sept. 14, 2014) which concludes that Virginia's grand larceny statute, Code § 18.2-95, does not qualify as a removable offense under 8 U.S.C. § 1101(a)(43)(G). Nonetheless, that case does not alter our analysis of the present case because Code § 18.2-96 is not "divisible," and Zemene received a one year sentence.

[4] Although he was then detained by federal authority, Zemene asserted the jurisdiction of the state court under Code § 8.01-654(B)(3), as he was still subject to the terms of his suspended sentence.

5

Zemene alleged that he had been prejudiced by Tracy's ineffective assistance of counsel because had Tracy been armed with a proper understanding of the immigration consequences, he would have likely been able to negotiate a plea agreement which avoided the risk of removal. Zemene further alleged that he had been prejudiced by the failure of Tracy to advise him of the negative impact of the plea agreement on Zemene's immigration status, and that, if he had been made aware that accepting the plea agreement would lead to his being subject to removal, "he would have gone to trial if he had not been offered another deal." The petition was supported by affidavits from Zemene and Tracy. On these grounds, Zemene requested that the circuit court vacate his conviction for petit larceny and grant him a new trial.

On December 5, 2013, the circuit court entered an order directing the Commonwealth to file a response to show cause why the writ should not issue. The order further provided that Zemene was required to inform the court of any change in his status with regard to the request for habeas relief.

On January 13, 2014, before the Commonwealth filed its response, a federal immigration court entered an order stripping Zemene of his lawful permanent resident status and ordering his removal from the United States. In that same order, the court exercised its discretion to withhold

proceeding with the removal on the ground that "it is more likely than not that [Zemene] would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to" Ethiopia. See 8 U.S.C. § 1231(b)(2).

On January 16, 2014, Zemene filed a revised petition for writ of habeas corpus in the circuit court including details of the actions taken by the immigration court. Zemene maintained that, despite the decision to withhold further proceedings on his removal, he had suffered actual prejudice as the result of Tracy's ineffective assistance of counsel because the loss of his green card meant that he was no longer able to seek employment and also because the order of the immigration court imposed certain travel restrictions on him. Moreover, because the withholding order could be lifted at any time, Zemene remained subject to removal as a result of the February 19, 2013 conviction for petit larceny.

On January 22, 2014, the Commonwealth filed a motion to dismiss Zemene's petition for writ of habeas corpus. Without expressly conceding that Tracy's representation of Zemene had not met an objective standard of reasonableness for effective representation of a criminal defendant, the Commonwealth asserted that Padilla "addressed only the performance part of the two-part Strickland[v. Washington, 466 U.S. 668 (1984)]

7

test" with respect to the failure to advise a client of the collateral immigration consequences that could result from a conviction. The Commonwealth maintained that the mere fact that the client was unaware of these consequences on his immigration status was not sufficient to prove that he had been prejudiced by counsel's ineffective representation.

Rather, to establish that he had been prejudiced by Tracy's failure to advise him of the immigration consequences of accepting the plea, the Commonwealth, quoting Padilla, 559 U.S. at 372, maintained that Zemene was also required to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." The Commonwealth maintained that Zemene had failed to allege facts sufficient to establish prejudice under this standard because his "self-serving statement [is] unaccompanied by any claim of innocence or articulation of any plausible defense he could have raised had he gone to trial." Moreover, the Commonwealth asserted that in accepting the plea Zemene's "focus was on being released by his birthday; his concern was not [removal]."

The Commonwealth further asserted that Zemene "offered no evidence to show that had he gone to trial, he would have been found not guilty of the larceny or that Commonwealth's Attorney Robert McClain would have asked for anything less

8

than a 12 month sentence on the larceny offense." Continuing, the Commonwealth also asserted that Zemene had not shown that the general district court "would have been willing to impose a sentence of less than 12 months had [Zemene] gone to trial." Thus, the Commonwealth contended that Zemene had "failed to show a substantial likelihood of a different result had he gone to trial."

Responding to the Commonwealth's motion to dismiss his petition for writ of habeas corpus, Zemene contended that the Commonwealth's position failed to address the question of prejudice objectively. Thus, quoting United States v. Akinsade, 686 F.3d 248, 255 (4th Cir. 2012)(quoting Ostrander v. Green, 46 F.3d 347, 356 (4th Cir. 1995)), Zemene maintained that "[e]ven when 'the prosecution's evidence "proved to be more than enough" for a guilty verdict,' prejudice may still be present." Given that he was unaware of the immigration consequences of accepting the plea agreement at the time Tracy advised him to do so, Zemene maintained that he need only show that it was objectively reasonable that a properly advised defendant in his circumstances would have sought a better plea agreement or chosen to go to trial and risk incarceration in order not to lose his status as a lawful resident and be returned to a country where he faced certain reprisal and possible death at the hands of the government. These

9

consequences pale in comparison to his alleged desire to be released from jail in order to celebrate his birthday and have another minor charge dismissed.

Zemene supported his opposition to the motion to dismiss with an affidavit further detailing his life history, his strong ties to his family and community in the United States, and the likely consequences of his being subject to reprisals if forced to return to Ethiopia.  He also asked the circuit court to take notice of Commonwealth v. Mohamed, 71 Va. Cir. 383 (2006), an opinion of the Circuit Court of Arlington County showing that the court under a plea agreement had reduced a two year sentence for grand larceny to less than one year upon a showing that the defendant had not been advised by his attorney of the negative consequences of the plea agreement on the defendant's immigration status.

The circuit court entered a final order dated February 6, 2014 sustaining the Commonwealth's motion to dismiss the petition for writ of habeas corpus.  In doing so, the court elected to address only the issue of prejudice, see, e.g., Jerman v. Director, Dept. of Corrections, 267 Va. 432, 438, 593 S.E.2d 255, 258 (2004), in order to determine whether Zemene's petition had sufficiently alleged that he was entitled to habeas relief.

The court, citing Padilla, acknowledged that whether prejudice resulted from Tracy's failure to advise Zemene of the negative consequences of accepting the plea agreement turned on whether "a decision to reject the plea bargain would have been rational under the circumstances" when objectively viewed. Nonetheless, departing from this standard the circuit court, following the argument of the Commonwealth, began its analysis of that question by observing that Zemene made no "claim of actual innocence or articulation of any plausible defense" and "show[ed] no concern for [removal]" at the time he accepted the plea agreement. Stating its belief that "it is highly likely [Zemene] would have been found guilty and it [is] highly unlikely [Zemene] could demonstrate leniency in sentencing," the court concluded that Zemene had failed to establish that he suffered any prejudice as a result of Tracy's failure to make Zemene aware of the negative consequences on his immigration status of accepting the plea agreement. In dismissing the petition, the court did not address Zemene's further claim that he had been prejudiced by Tracy's failure to address the immigration issue in negotiating the plea agreement with the Commonwealth.

## DISCUSSION

We awarded Zemene an appeal from the judgment of the circuit court on the following assignment of error:

The circuit court erred by utilizing an inappropriate standard to determine whether or not the prejudice prong under Strickland v. Washington, 466 U.S. 668 (1984) was met in the context of a plea agreement.

Before addressing the merits of Zemene's assignment of error, we begin by briefly addressing two procedural issues raised by the Commonwealth. First, the Commonwealth contends that Zemene's assignment of error is deficient because it does not identify a specific ruling of the circuit court that, if reversed, would entitle Zemene to the relief he requests of a remand to the circuit court for further proceedings including an evidentiary hearing. We disagree.

As we have recently explained, "it is the duty of an appellant's counsel to lay his finger on the error in his assignment of error, and not to invite an appellate court to delve into the record and winnow the chaff from the wheat." Findlay v. Commonwealth, 287 Va. 111, 115-16, 752 S.E.2d 868, 871 (2014)(internal quotation marks, alteration, and citations omitted). Zemene's assignment of error "lays a finger" precisely on the alleged error of the circuit court by stating that the court applied the wrong standard in analyzing the prejudice prong of the Strickland test.

Next, the Commonwealth contends that because the immigration court has withdrawn its order of removal against Zemene, "his current claim is too speculative to conclude he

12

suffered prejudice under Strickland."  Again, we disagree. Zemene has already lost a significant interest because his status as a lawful permanent resident has been revoked by ICE. Moreover, the withdrawal of the order of removal does not eliminate the possibility of Zemene's eventual removal, but merely leaves the issue to the continuing discretion of the immigration court.  There is nothing speculative about the actual and potential loss of civil liberties that Zemene faces as a result of his conviction and sentence for petit larceny.

We now turn to the merits of Zemene's appeal.  In Strickland, the United States Supreme Court established a two-pronged test to assess whether an attorney's representation was ineffective.  466 U.S. at 687.  To prevail on an ineffective assistance of counsel claim, the petition must satisfy both the "performance" prong and the "prejudice" prong of the Strickland test.  Id.  To satisfy the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 688.

As indicated above, the Commonwealth did not directly contest that Tracy's performance fell below an objective standard of reasonableness, and the circuit court elected not to address the issue at all.  Nonetheless, we will address this issue in order to determine whether the dismissal of Zemene's petition was error.

It is abundantly clear from Tracy's own affidavit that, despite being made aware that Zemene was not a citizen of the United States in their initial meeting, Tracy undertook no effort to learn the precise nature of Zemene's immigration status. Nor did Tracy determine if there were potential negative consequences to Zemene's immigration status arising from a conviction for petit larceny and a sentence of twelve months, and he did not broach this subject with the Commonwealth during plea negotiations. Finally, Tracy did not discuss with Zemene the likelihood that accepting the plea agreement would lead to Zemene's loss of his lawful permanent resident status and subject him to removal proceedings. Accordingly, we hold that the allegations of the petition for writ of habeas corpus were sufficient to satisfy the "performance" prong of Strickland.

The final and dispositive issue in this appeal is whether the circuit court erred by applying an improper standard in reaching the conclusion that the allegations of Zemene's petition for writ of habeas corpus failed adequately to allege facts in support of the "prejudice" prong of the Strickland test. Zemene contends that the circuit court erred by focusing its analysis on whether the outcome of the proceedings in the general district court would have resulted in his acquittal or in his receiving a sentence which would

14

not have triggered the ICE removal proceeding.  He contends that in doing so, the court failed to apply the standard applicable to a petitioner seeking habeas relief in a Padilla immigration context, which when considered objectively shows "that a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 559 U.S. at 372. A finding of prejudice in this context depends on the specific circumstances of each case.  Id.; Kovacs v. United States, 744 F.3d 44, 52 (2d Cir. 2014)("[E]ach case is a context-specific application of Strickland directed at a particular instance of unreasonable attorney performance.").

In Hill v. Lockhart, 474 U.S. 52, 59 (1985), the Supreme Court of the United States required the petitioner to establish prejudice by showing that there was a reasonable probability he would have insisted on going to trial rather than pleading guilty.  More recently the Court has clarified that a proven desire to go to trial is not the only context in which prejudice may occur where a defendant has accepted a plea agreement upon improper and inadequate advice of counsel. Missouri v. Frye, ___ U.S. ___, ___, 132 S. Ct. 1399, 1409-10 (2012).

Zemene contends that the circuit court erred by applying the standard from Hill to conclude that rejection of the plea agreement would have been rational only if Zemene was assured

of an acquittal or of receiving a more favorable sentence had he gone to trial. Zemene asserts that in a Padilla context, unlike in Hill, it was only necessary for the petitioner to show that in rejecting the plea agreement he would have had a reasonable probability of obtaining a result that would not affect his immigration status, even if an active jail sentence would have been avoided by accepting the plea agreement. Cf. Laster v. Russell, 286 Va. 17, 24-25, 743 S.E.2d 272, 275-76 (2013).

Zemene contends that his petition and its supporting documents establish that had Tracy been adequately prepared with knowledge of the immigration consequences of the plea agreement and advised him accordingly, Zemene not only would have rejected the plea agreement, but would have had a reasonable probability of obtaining a new plea agreement which would have avoided those consequences. Failing that circumstance, Zemene further contends that there was a reasonable probability that, contrary to the statement by the circuit court, he would have received a more lenient sentence had he chosen to go to trial because Tracy could have presented the immigration consequences to the general district court as a factor to be considered in sentencing.

The Commonwealth responds that other courts that have addressed the issue have held that a habeas petitioner "cannot

make that showing merely by telling [the Court] now that [he] would have gone to trial then if [he] had gotten . . . . accurate advice." Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012). "All courts require something more than [a] defendant's subjective, self-serving statement that, with competent advice, he would not have pled guilty and would have insisted on going to trial." Bahtiraj v. State, 840 N.W.2d 605, 611 (N.D. 2013)(internal quotation marks and citation omitted); see also Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002); United States v. LaBonte, 70 F.3d 1396, 1412-13 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751 (1997). Accordingly, the Commonwealth maintains that it was proper for the circuit court to first look to the weight of the evidence against Zemene. See, e.g., Premo v. Moore, 562 U.S. 115, ___, 131 S. Ct. 733, 744 (2011).

Thus, the Commonwealth contends that because Zemene articulated no defenses to his crime and did not challenge the sufficiency of the evidence to support his guilty plea, the circuit court correctly relied upon the absence of possible defenses and the strength of the Commonwealth's case in determining whether it would have been rational for Zemene to choose to go to trial. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). But see United States v. Orocio, 645 F.3d 630, 643 (3d Cir. 2011)(holding that the Supreme

17

Court "has never required an affirmative demonstration of likely acquittal . . . as the sine qua non of prejudice"). Clearly, had Zemene gone to trial he would have faced prosecution for at least one other offense and, contrary to his apparent desire not to be incarcerated on his birthday, potentially would have received an active jail sentence. Accordingly, the Commonwealth contends that the court's conclusion that Zemene would not have received a more lenient sentence was supported by the evidence and, thus, established that rejection of the plea agreement which avoided these consequences would not have been rational.

For purposes of this case, in advancing a claim of prejudice due to defense counsel's failure to advise him of the immigration consequences when entering a plea agreement, Zemene need not demonstrate a likelihood of acquittal at trial. Rather, the question is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59 (emphasis added). As the Supreme Court observed in Padilla, an alien defendant might rationally decide that "[p]reserving [his] right to remain in the United States may be more important . . . than any potential jail sentence." 559 U.S. at 368. In such cases, the correct inquiry is whether the defendant would have "gone to trial in the first place" because he "might

18

rationally be more concerned with removal than with a term of imprisonment." Orocio, 645 F.3d at 643. If this is the defendant's sentiment, "the threat of removal provides [a] powerful incentive to go to trial" even if the evidence against him is strong. Id. at 645.

In short, when reviewed under the proper standard for a habeas corpus proceeding alleging a violation of the principles recognized in Padilla, the court's consideration of the rationality of a decision whether to accept or reject a plea agreement must include a properly advised defendant's desire to avoid a negative impact on his immigration status. Here, Zemene stated in his petition that had he been properly advised by Tracy, he would have rejected the plea agreement and either instructed Tracy to seek a new agreement that avoided the negative immigration consequences or, failing that, he would have gone to trial in an effort to avoid those consequences. Indeed, when objectively viewed, it is difficult even to imagine that Zemene would not have done so and especially in light of the fact that with respect to his immigration status he faced no worse consequence by going to trial and stood to gain a significant benefit if he obtained a sentence of even a single day less than the maximum. The dismissal of the other misdemeanor charges afforded him no benefit in regard to his immigration status because

convictions for those offenses would not have triggered removal proceedings under 8 U.S.C. § 1227. Accordingly, we conclude that the petition for habeas corpus adequately alleged that Zemene was prejudiced by Tracy's ineffective assistance.

## CONCLUSION

For these reasons, we hold that the circuit court applied an incorrect standard for determining whether prejudice resulted from Tracy's failure to advise Zemene of the adverse consequences on his immigration status of accepting the plea agreement. Accordingly, we will reverse the judgment of the circuit court dismissing Zemene's petition for writ of habeas corpus. The case is remanded for an evidentiary hearing regarding the factual allegations in Zemene's petition, and entry of an appropriate order consistent with the views expressed in this opinion.

Reversed and remanded.